UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

********************************************************************************

| | | |
|---|---|---|
| | * | |
| UNITED STATES OF AMERICA, *ex rel.* | * | CIV 16-4115 |
| C. Dustin Bechtold, M.D. and | * | |
| Bryan Wellman, M.D., | * | |
| | * | |
| Plaintiff/Relators, | * | MEMORANDUM OPINION |
| vs. | * | AND ORDER |
| | * | |
| WILSON ASFORA, M.D.; | * | |
| MEDICAL DESIGNS, LLC.; and | * | |
| SICAGE, LLC., | * | |
| | * | |
| Defendants. | * | |
| | * | |

********************************************************************************

Pending before the Court is a Motion to Dismiss filed on behalf of Defendants Wilson Asfora, M.D., Medical Designs, LLC, and Sicage, LLC. For the following reasons, Defendants' Motion is denied.


I. BACKGROUND

This case is a qui tam action initiated by relators Dr. Carl Bechtold and Dr. Bryan Wellman, joined by the United States. Dr. Bechtold is an orthopedic surgeon and Dr. Wellman is a neurosurgeon; both are employed by Sanford Medical Center in Sioux Falls, SD.

Defendant Dr. Wilson Asfora is a neurosurgeon in Sioux Falls, SD, and the owner of Defendant Medical Designs, LLC (MDLLC) and Defendant Sicage, LLC (Sicage). Dr. Asfora and his wife established MDLLC, while Dr. Asfora alone established Sicage. Dr. Asfora ordered and used devices manufactured and sold by MDLLC and Sicage in his surgeries performed at Sanford Medical Center and related medical facilities in Sioux Falls. As the owner of MDLLC and Sicage, Dr. Asfora profited from the sales of these devices.

The facts as alleged in Plaintiffs' Complaint will be deemed true for purposes of this Motion to Dismiss. *United States ex rel Joshi v. St. Luke's Hospital. Inc.,* 441 F.3d 552, 555 (8th Cir. 2006).

The several counts against Defendants allege that Defendant Asfora used MDLLC and Sicage to distribute devices to himself, which he used for his surgeries. It is then claimed Dr. Asfora profited from the sales in violation of the False Claims Act. The violations are alleged to have arisen

through Dr. Asfora's presentations for payment of false claims and in the making of false statements in connection with the payment of those claims. The claims allegedly were false because they were made in violation of the Anti-Kickback Statute and in connection with surgeries that were medically unnecessary. Additional counts allege that Dr. Asfora conspired with Defendants MDLLC and Sicage to violate the False Claims Act, and that this conduct also gives rise to common law claims of unjust enrichment and payment by mistake. The Defendants have filed a Motion to Dismiss, Doc. 73.

## II.  MOTION TO DISMISS

Defendants have moved to dismiss all counts under Federal Rules of Civil Procedure 12(b)(6) and 9(b). The standard that a plaintiff must meet to avoid dismissal under Rule 12(b)(6) is set forth in *Bell Atlantic Corp. v. Twombly*, 550 U. S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), and requires that the plaintiff have included in the Complaint "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Accord, *Ashcroft v. Iqbal*, 556 U. S. 662, 129 S. Ct. 1937, 173 L. Ed.2d 868 (2009). The Eighth Circuit has added additional guidance to this standard by directing the District Court to accept as true all allegations of material fact and construe them in a light most favorable to Plaintiff. *Joshi,* 441 F.3d at 555. While conclusory statements are insufficient, well-pleaded factual allegations should be deemed true and the District Court should proceed to determine whether plaintiff is entitled to relief. *Drobnak v. Anderson Corp.*, 561 F.3d 778 (8th Cir. 2008). Accord *Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1058 (8th Cir. 2013) (42 U.S.C. § 1983 suit against police who were given qualified immunity; dismissal not warranted unless beyond a doubt plaintiff cannot prove the case). See also, *Reliance Medical Systems, LLC v. United States*, 2014 WL 576113 (C.D. Cal. 2014) (denying Motion to Dismiss in case involving spinal implants and alleged scheme to defraud).

Additional requirements apply under Rule 9(b) when a plaintiff alleges fraud. In such a case, the plaintiff must plead the fraud with particularity, meaning plaintiff must supply sufficient information about the fraudulent conduct to enable the defendant to "respond specifically and quickly" to defend against the allegations. *United States ex rel Strubbe v. Crawford Cnty. Mem. Hosp.*, 915 F.3d 1158, 1163 (8th Cir. 2019). Plaintiff is not required, however, to describe all actions, dates, participants and other details of the alleged fraud at the pleading stage. *United States ex rel Benaissa v. Trinity Health*, 963 F.3d 733, 739 (8th Cir. 2020) (citing *Joshi*, 441 F.3d at 557). The *Benaissa* court expressed the view that, "This particularity requirement demands a higher

2

degree of notice than that required for other claims," and "is intended to enable the defendant to respond specifically and quickly to the potentially damaging allegations." *Id.* (quoting *United States ex rel Costner v. URS Consultants, Inc*., 317 F.3d 883, 888 (8th Cir. 2003)).  The court continued, "To satisfy Rule 9(b)'s particularity requirement, 'the complaint must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result,'" *Benaissa*, 963 F.3d at 739 (quoting *Joshi*, 441 F.3d at 556).  As the court in *Joshi* noted, "Put another way, the complaint must identify the 'who, what, where, when, and how' of the alleged fraud."  441 F.3d at 556.

The Eighth Circuit has provided specific guidance for pleading violations of the False Claims Act.  In *United States ex rel Thayer v. Planned Parenthood of the Heartland*, 765 F.3d 914, 918 (8th Cir. 2014), the court clarified that where the question is whether the defendant has submitted false claims for payment, the plaintiff may plead representative examples of the false claims.  In the alternative, the plaintiff may allege details of the scheme to submit false claims "paired with reliable indicia that lead to a strong inference that claims actually were submitted." *Id.* (citing *United States ex rel Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009)).  The court reiterated this standard in *Benaissa*, 963 F.3d at 739 (quoting *Strubbe*, 915 F.3d at 1163).

Other Courts of Appeal also have provided helpful direction in cases alleging False Claims Act violations based on the Anti-Kickback Statute.  For example, the Court of Appeals for the First Circuit recently instructed as follows: "To be clear, the plaintiff in such a case need not prove at the pleading stage that what he complained to his employer about was an actual AKS violation.  But, the plaintiff must sufficiently allege that 'his reports concerned FCA-violating activity such as the submission of false claims' resulting from conduct that could constitute a violation of the AKS." *United States ex rel Booker v. Pfizer*, 847 F.3d 52, 60 (1st Cir. 2017).  Further, as the court explained in *United States ex rel Groat v. Boston Heart Diagnostics Corp*., 255 F.Supp.3d 13, 20 (D. D.C. 2017)(citing *Twombly*, 550 U.S. at 556), "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  The court determined the Plaintiff had sufficiently pleaded that Boston Heart had "submitted false claims to Medicare Advantage Plans and Medicaid Plans, which are funded by Medicare and Medicaid dollars" by showing the submission of the claims to the Government; alleging the tests at issue were "worthless" for certain patients and therefore "known

3

to be medically unnecessary"; creating an evidence issue over medical necessity, which should not be resolved at the Motion to Dismiss stage but deferred until the Summary Judgment stage; and supplying sufficient evidence of defendant's knowledge based on notice to the CEO and a Vice President through attendance at a meeting with Plaintiff.  255 F.Supp.3d at 22.

### III.  FALSE CLAIMS ACT

#### A.  Legal Standard

##### 1.  False Claims Act Allegations

Plaintiffs allege that Defendants violated the False Claims Act (FCA), 31 U.S.C. § 3729(a)(1), which establishes civil penalties for, in pertinent part, any person who:

(A)  knowingly presents or causes to be presented, a false or fraudulent claim for payment or approval;

(B)  knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

(C) conspires to commit a violation of subparagraph (A), (B)….

As the Supreme Court commented in *In Universal Health Services, Inc. v. United States ex rel Escobar*, 579 U.S.___, 136 S. Ct. 1989, 1996, 195 L.Ed.2d 348 (2016), the False Claims Act was enacted after the Civil War to address the "massive frauds perpetrated by large contractors during the Civil War."  Despite its having been amended numerous times since then, the focus of the statute, according to the Court, "remains on those who present or directly induce the submission of false or fraudulent claims."  *Id.*  A claim is a request for payment or reimbursement, 31 U.S.C. § 3729(b)(2)(A).  The statute includes a requirement of "knowledge" meaning "actual knowledge of the information," or acting in "deliberate ignorance of the truth or falsity of the information," or "in reckless disregard of the truth or falsity of the information." § 3729 (b)(1)(A).

 The gist of Plaintiffs' first claim under the False Claims Act is that Defendants submitted or caused the submission of false or fraudulent claims for reimbursement under Medicare, Medicaid, and Tricare to Sanford Medical Center, which in turn submitted them for payment.  The claims were false or fraudulent, according to Plaintiffs, because they allegedly arose from the remuneration Defendant Asfora improperly received in connection with his use of devices obtained through Defendants MDLLC and Sicage, in violation of the Anti-Kickback Statute, and because the payments Defendant Asfora received from use of the devices arose from medically unnecessary surgeries.  Furthermore, according to Plaintiffs, the Defendants violated the False Claims Act in a

second way by submitting false statements to obtain reimbursement, in that Defendants falsely claimed to be in compliance with the Anti-Kickback Statute and other applicable statutes.

a. The Anti-Kickback Statute

(1)  General

The Anti-Kickback Statute, 42 U.S.C. § 1320a-7b prohibits "knowingly and willfully solicit[ing] or receiv[ing] any remuneration (including any kickback, bribe, or rebate) directly or indirectly,… in cash or in kind," in exchange for referring or inducing another to refer, an individual to particular goods or services "for which payment may be made in whole or in part under a Federal Health Care program."  The purpose of the statute as articulated by the Department of Health and Human Services is to protect patients by preventing health care professionals from profiting from sales of devices where they have an incentive to employ them in surgery merely to satisfy a profit motive or where surgeries are medically unnecessary.  78 Fed. Reg. 19,271 (March 29, 2013), 2013 WL 1248464.

The statute focuses on remuneration, and "any" remuneration in violation of the statute is covered. *United States v. Shoemaker*, 746 F.3d 614, 630 n.22 (5th Cir. 2014).  The statute applies to "any person" and covers both givers and receivers of the remuneration. *Id*. at 619, 631.

To fit the elements of the statute, Plaintiff must establish more than mere encouragement of Defendant to refer business, *Hanlester Network v. Shalala*, 51 F.3d 1390, 1398 (9th Cir. 1995). Rather, there must be inducement under the statute, meaning "an intent to exercise influence over the reason or judgment of another in an effort to cause the referral of program-related business." *Id.*  This definition was provided by the Secretary of Health and Human Services and the *Hanlester* court "agree[d] with this interpretation."  *Id.*

Further, the Defendant's conduct must be knowing and willful, meaning that Defendant knows the conduct is wrongful, even if the Defendant is unaware of the particular statute violated. *Hanlester,* 51 F.3d 1390, 1400.  As one District Court noted, willfulness ordinarily is proved by circumstantial evidence and generally involves "proof that a defendant took several actions inconsistent with a good-faith belief that his conduct was legal." *Klaczak v. Consolidated Medical Transport*, 458 F. Supp.2d 622, 676 (N.D. Ill. 2006).

(2)  Physician Owned Distributorships

An area of particular concern to Congress in addressing possible fraudulent conduct in connection with the delivery of health care services is the Physician Owned Distributorship (POD).

The Department of Health and Human Services describes this type of entity as follows: "'POD' is any physician-owned entity that derives revenue from selling, or arranging for the sale of, implantable medical devices and includes physician-owned entities that purport to design or manufacture, typically under contractual arrangements, their own medical devices or instrumentation." Special Fraud Alert: Physician-Owned Entities (March 26, 2013), 78 Fed. Reg. 19, 271, FN 1 (March 29, 2013), 2013 WL 1248464. Congress has not prohibited all PODs, but recognizing the possibility of financial incentives, has described conduct in the Anti-Kickback Statute which is implicated by PODs. The rationale was expressed by the Department in the following language:

> PODs that exhibit any of these or other questionable features potentially raise four major concerns typically associated with kickbacks—corruption of medical judgment, overutilization, increased costs to the Federal health care programs and beneficiaries, and unfair competition. This is because the financial incentives PODs offer to their physician-owners may induce the physicians both to perform more procedures (or more extensive procedures) than are medically necessary and to use the devices the PODs sell in lieu of other, potentially more clinically appropriate, devices. We are particularly concerned about the presence of such financial incentives in the implantable medical device context because such devices typically are "physician preference items," meaning that both the choice of brand and the type of device may be made or strongly influenced by the physician, rather than being controlled by the hospital or ASC where the procedure is performed. *Id.*

Concerned with this possibility of fraud, Congress did not prohibit all physician-owned distributorships, but also declined to provide a "safe harbor" for them across the board. In implementing the statute, the Department of Health and Human Services also declined to enact a blanket prohibition of PODs, and also recognized some "safe harbors" for situations where physicians use devices that are distributed by PODs in which they have an interest. For example, a "safe harbor" protection from liability applies if the doctor-owner of the POD has a limited ownership interest and recoups a minority of any revenue generated. 42 C.F.R. 1001.952(a)(2). Lacking "safe harbor" protection exposes the physician who owns the POD to scrutiny as possibly engaging in fraudulent conduct. It is important to keep in mind, however, the caution expressed by the court in *Klaczak,* which emphasized, "The various Medicare 'safe harbors' define a subset of clearly legal conduct, but that does not mean that anything outside of the 'safe harbors' violates the AKS," 458 F.Supp.2d at 686 (citing *United States v. Shaw*, 106 F.Supp.2d 103, 115 (D. Mass. 2000), which cites 64 FR 63518-01 (November 19, 1999)).

6

(3)  Medically Unnecessary Surgeries

In developing the provisions of the False Claims Act, Congress was guided by the recognition that financial incentives can corrupt the judgment of health care providers, and that physicians may engage in medically unnecessary surgeries that are financially rewarding. Submitting a bill for payment for such a surgery violates the False Claims Act, *Reliance*, 2014 WL 5761113, at *2 and *5.  The violation might exist alone or operate in tandem with other conduct which may, in turn, violate the Anti-Kickback Statute.  *Groat,* 255 F.3d at 31.

The question of medical necessity implicates fraudulent conduct by the physician, and not simply medical malpractice. The Court of Appeals for the Third Circuit recently noted that a difference of medical opinion is enough "to create a triable dispute of fact regarding FCA falsity." *United States ex rel Druding v. Care Alts.*, 952 F.3d 89, 100 (3d Cir. 2020)(disagreeing with *United States v. AseraCare, Inc.*, 938 F.3d 1278, 1297 (11th Cir. 2019)(*AseraCare III*)).  A separate analysis of falsity and scienter will be made at the summary judgment stage, but here we are concerned with adequacy of pleading.  Although in a different context, the court in *Groat* adopted an approach consistent with this reasoning, determining that any dispute about medical necessity should not be resolved through a Motion to Dismiss.  *Groat*, 255 F.Supp.3d at 28.

Furthermore, it is relevant to proving the knowledge element under the False Claims Act that a physician, as a professional, would understand that a bill would be submitted for payment in connection with the surgery and that if the surgery were medically unnecessary, the claim for payment would be false.  *Druding*, 952 F.3d at 97-98; *Reliance*, 2014 WL 5761113, *5.

b.  Express and Implied False Certification

Under various provisions of the Medicare, Medicaid and Tricare programs, health care providers are required to certify compliance with the requirements of those programs.  Form CMS-1500 is designed to implement the certification process and requires the provider to expressly certify that the medical care at issue was not administered in violation of the Anti-Kickback Statute and was medically necessary.  It is also conceivable that a provider would also submit documentation that does not specifically denote which conditions for payment by the federal government apply, but would assert compliance with them.  This is the theory of implied certification.

In *Escobar*, the Supreme Court held that an individual who submits a claim for payment by the federal government impliedly certifies compliance with all conditions of payment, and if that certification is untrue,  the "implied false certification" theory can support a claim under the False

Claims Act. 136 S. Ct. at 1995. The Court added that the defendant can be liable for violating the Act's requirements even if compliance with them was not explicitly stated as a condition of payment. *Id.* The Court cautioned, however, that not every violation of the certification requirement gives rise to liability for the defendant. The Court included a proviso that the defendant must have knowingly violated a requirement that defendant is aware is material to the Government's payment decision. *Id.* Under the False Claims Act, 31 U.S.C. § 3727(b)(4), "material" is defined as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." The *Escobar* Court instructed to "look to the effect on the likely or actual behavior of the recipient of the alleged misrepresentation." *Id*. at 2002 (quoting 26 R. Lord, Williston on Contracts § 69:12, p. 549 (4th ed. 2003)). A statement is not material if it is minor or insubstantial, or simply because it would give the Government the option not to pay; it is a demanding standard. 136 S. Ct. at 2002. The Court also explained that if the Government has paid claims despite its knowledge that certain requirements were violated and has signaled no change in position, that is strong evidence that the statements were not material. *Id.*

      B.  ANALYSIS

        1.  Presentation of False Claims for payment—
            False Claims Act 31 U.S.C. § 3729(a)(1)(A)

In Count I, Plaintiffs allege that Defendant Asfora "knowingly submitted" and "caused Sanford Medical Center to submit" claims in violation of the False Claims Act to Medicare and related federal entities for payment, in that he solicited remuneration to induce him to order the purchase of products from Defendant MDLLC in violation of the Anti-kickback Statute. Doc. 58 ¶ 316. Likewise, Plaintiffs allege Defendant MDLLC violated the same provisions by offering and paying remuneration to Dr. Asfora to induce him to order its products. *Id.* ¶ 317. In Count II, Plaintiffs allege that Defendant Asfora engaged in the identical conduct with Defendant Sicage*, id*. ¶¶ 321, 323, and that Defendant Sicage engaged in the identical conduct with Defendant Asfora, *id.* ¶¶ 322, 323.

Plaintiffs describe in detail the alleged scheme engaged in by Defendants Asfora, MDLLC and Sicage, *id.* ¶¶ 141, 154, over a lengthy period of time which enabled Dr. Asfora to reap substantial profits from his use of devices supplied by MDLLC and Sicage. *Id.* ¶¶ 123, 142. Plaintiffs allege that this conduct was knowing, based on his receipt of fraud alerts from HHS, *id*. ¶¶94-103; his involvement in other investigations, ¶¶ 135-41; warnings, ¶¶ 158-60, 241-44; reviews,

¶¶ 261-90; and his admission, ¶ 232.  Plaintiffs further allege that at least some of these claims were submitted for payment by Medicare, Medicaid or Tricare.  *Id.* ¶ 289.  Plaintiffs have sufficiently pleaded the allegations.

Count I also alleges that Defendant Asfora knowingly submitted and caused Sanford Medical Center to submit, and that Defendant MDLLC knowingly caused Asfora and Sanford Medical Center to submit, false claims to Medicare and other federal entities for payment knowing the claims were false because they sought compensation for certain surgeries that were medically unnecessary, *id.* ¶¶ 282, 287-90, or were more extensive than necessary.  *Id.* ¶ 318.  Count II alleges the same conduct against Defendant Asfora and Defendant Sicage.  *Id.* ¶ 323.

Plaintiffs' allegations that certain surgeries were medically unnecessary surgeries or more extensive than necessary are sufficiently pleaded.  *Id.* ¶¶ 282-90.  Plaintiffs' allegations that the conduct was knowing and that claims were submitted to the pertinent federal entities for payment also meet the standard.  *Id.* ¶¶ 216-17.  Plaintiffs have sufficiently pleaded the alleged violations of the False Claims Act, 31 U.S.C. § 3729 (a)(1)(A).

### 2.  False Certification of Claims for Payment—31 U.S.C. § 3729(a)(1)(B)

Plaintiffs allege in Count III that Defendants Asfora and MDLLC made false statements, including  false certifications, on provider enrollment forms and claim forms that they were in compliance with the Anti-Kickback Statute and that the surgeries from which the claims arose were medically necessary.  The allegations appear throughout the Complaint, but in particular in the sections listed herein.  Doc. 58 ¶¶ 31, 37-38, 103.  Plaintiffs allege the false statements were made knowingly.  *Id.* ¶¶ 290-95; 309-14.  Plaintiffs allege the same conduct in Count IV against Defendant Asfora and Defendant Sicage.  *Id.* ¶¶ 58, 296, 306-08.  Plaintiffs allege these certifications caused the submission of false claims for payment by Sanford Medical Center.  *Id.* ¶¶ 27, 32.  Given the manner in which the claims are paid by the federal government, the documentation allegedly must be accurate and the information submitted is material to payment.  *Id.* ¶¶ 50-56.  Plaintiffs have sufficiently pleaded the allegations against Defendants.

### IV.  CONSPIRACY CLAIMS

In Counts V and VI, Plaintiffs have alleged conspiracy to violate the False Claims Act by Defendants Asfora and MDLLC, and by Defendants Asfora and Sicage, respectively.  To establish their claims, Plaintiffs will have to prove that Defendants entered into an agreement to violate the Act, and committed an overt act in furtherance.  18 U.S.C. § 371.

As previously noted, Plaintiffs have alleged that Defendant Asfora as an individual conspired with MDLLC, *id.* ¶¶ 336-38 (owned by Defendant Asfora and his wife) and with Sicage, *id.* ¶¶ 341-43 (owned by Defendant Asfora alone).  The question arises whether there is sufficient separation between Defendant and his distributorships that a conspiracy count will lie.  In *Cedrick Kushner Promotions, Ltd. v. King*, 533 U. S. 158, 121 S. Ct. 2087, 195 L. Ed.2d 348  (2001), a case brought under the RICO statute, 18 U.S.C. § 1961, et al, the Court accepted the argument that dismissal of a conspiracy charge was improper where the claim was against Defendant individually and against the Defendant as a solely-owned corporation.  533 U. S. at 162.  The Court reasoned that Defendant's adoption of the corporate form transformed the entity and it was no longer simply an individual person.  *Id.*  The Court explained, "The corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status.  And we can find nothing in the statute that requires more 'separateness' than that".  *Id.*

That rationale was adopted in *United States ex rel Millin v. Krause*, 2018 WL 1885672 (D. S.D. 2018), a case involving farm subsidies which arose under the False Claims Act, where the court held the intracorporate conspiracy doctrine does not apply in the context of the Act.  Recognizing that the question remains unsettled, *id*. at 12, the court determined the doctrine does not bar a conspiracy claim against a corporation and its employee for violation of the False Claims Act.  The *Millin* court adopted a second rationale as well, noting that because the conduct at issue would violate both the criminal conspiracy statute, 18 U.S.C. § 371, and the civil liability sections of the False Claims Act, the intracorporate conspiracy doctrine would not preclude a conspiracy charge (citing *United States ex rel Harris v. Lockheed Martin Corp*., 905 F.Supp.2d 1343 (N.D. Ga. 2012)).

The Defendants' Motion to Dismiss Counts V and VI centers on both the lack of an underlying offense which constitutes a violation of the False Claims Act, Doc. 74, p. 31, and failure to establish separate parties involved in the conspiracy.  Plaintiffs have alleged sufficient facts on both issues, see Sec. III. A.1., above, and Doc. 58, ¶¶ 15-17.  The Defendants' Motion is denied.

V.  COMMON LAW CLAIMS

The standard for the common law claims brought by Plaintiffs was articulated in *United States ex rel Roberts v. Aging Care Home Health, Inc*., 474 F. Supp. 2d 810 (W.D. La. 2007), where the court set forth the elements for a claim of unjust enrichment.  In such a case, the Plaintiff would have to show:  1- it had a reasonable expectation of payment; 2-Defendant should reasonably have

expected to pay; or 3-society's reasonable expectations of person and property would be defeated by non-payment.  474 F.Supp.2d at 820.  For payment by mistake, the Plaintiff must show the Medicare program "made… payments under an erroneous belief which was material to the decision to pay." *Id*. at 819.

Plaintiffs have brought claims for unjust enrichment and payment by mistake which the Defendant claims are duplicative of the statutory claims.  Under *Pa. Nat'l Mut. Cas. Ins. Co. v. Pine Bluff*, 354 F.3d 945, 951 (8th Cir. 2004), it is permissible to pursue consistent remedies as long as Plaintiffs are awarded only one.  Plaintiffs have pleaded sufficient facts on these claims as alternatives to the False Claims Act claims above, and the Motion to Dismiss these counts is denied.

VI.  CONCLUSION

Plaintiffs have pleaded with sufficient particularity that Defendants submitted false claims for payment under Medicare, Medicaid or Tricare.  The alleged false claims are based on Defendant Asfora's use of devices from Defendant MDLLC and Defendant Sicage in violation of the Anti-Kickback Statute as well as his performance of medically unnecessary surgeries.  Plaintiffs have provided sufficient examples of allegedly medically unnecessary surgeries performed by Dr. Asfora, and an alleged scheme to obtain improper reimbursement from Medicare, Medicaid and Tricare. Plaintiffs have alleged scienter sufficiently based on defendant's alleged deception, the warnings of illegality, and the prior qui tam action.  Therefore, Defendants' Motion to Dismiss is denied.

IT IS ORDERED that Defendants' Motion to Dismiss (Doc. 73) is denied.

Dated this 16th day of September, 2020.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK

11